**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:20-cv-P104-BJB**

**JERRY NATION**                                                                                                          **PLAINTIFF**

v.

**RANDY WHITE** *et al.*                                                                                               **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Nation filed this *pro se* 42 U.S.C. § 1983 action *in forma pauperis*. Because Nation is incarcerated at the Kentucky State Penitentiary (KSP), 28 U.S.C. § 1915A instructs the Court to conduct an initial review of this lawsuit to determine whether Nation has stated any cognizable claims.[1]  Congress requires that:

> the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

After reviewing the allegations set forth in Nation's complaint, the Court will allow some claims to proceed and dismiss the remaining claims.

### I. THE COMPLAINT'S ALLEGATIONS

Nation, a convicted inmate at KSP, has sued Randy White, identified as a Deputy Commissioner for the Kentucky Department of Corrections (KDOC), and DeEdra Hart, the KSP Warden, in their individual and official capacities.

---

[1] Nation did not file the original complaint on this Court's approved § 1983 filing form. The Clerk of Court issued a notice of deficiency and Nation complied. *See* DN 1-3. In conducting the initial review, the Court has examined both the original complaint and the complaint filed on the Court-approved form.

The complaint, whose allegations we assume to be true at this stage, states that Nation is a transgender female inmate. The pleading alleges that male staff strip search Nation, contrary to Nation's request, and seeks an order that "female staff only" conduct the searches. Complaint [DN 1-3] at 4. Specifically, Nation states that:

> Everywhere I have been[,] I have been stripped by Female Staff except KSP. I carry my self as a female. I have a sports bra on and you would not let [a male corrections officer strip] a female would you? Well I feel the same way as a female inmate would."

*Id.* (inserting, in brackets, information from the original complaint).

Nation alleges that the KSP Grievance Committee denied a grievance regarding this matter, and that Hart denied the appeal of that denial, concluding that the "strip searches were within [Prison Rape Elimination Act] compliance and conducted in a dignified manner." *Id.* at 5. Hart's denial, according to the complaint, also stated that "KSP staff are conducting strip searches within the institution in accordance with policy and you [Nation] have submitted no evidence to support your claim of an exigent circumstance." *Id.*

White also denied Nation's subsequent appeal, concluding that "[a]ll strip searches in the [Restricted Housing Unit] are being conducted in accordance with policy guidelines and there is no evidence that policy is not being followed in this area." Commissioner's Review [DN 1-1] at 13.

Nation's complaint seeks compensatory and punitive damages, as well as injunctive relief requiring that female staff conduct strip searches of transgender inmates. (The complaint implies, but does not specify, that this request is limited to transgender female inmates, not transgender male inmates as well.) *See* Complaint at 6. Nation also asks to "be removed from KSP for good and sent to [the Kentucky State Reformatory]." *Id.*

2

## II.  STANDARD OF REVIEW

When a prisoner sues a governmental entity, officer, or employee, Congress requires the trial court to review the complaint and dismiss some or all of it if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *See* § 1915A(b)(1)–(2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

This initial screening occurs before the defendants must respond, and therefore does not benefit from the scrutiny of adversarial review or briefing.  The Court nevertheless applies the same dismissal standard that would apply if a defendant filed a motion to dismiss a complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The U.S. Court of Appeals for the Sixth Circuit has explained that "the dismissal standard articulated in *Iqbal* and *Twombly*"—the U.S. Supreme Court's authoritative decisions concerning the adequacy of a complaint—"governs dismissals for failure to state a claim under [§ 1915A]" as well.  *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010).

In order to "state a claim upon which relief may be granted" under § 1915A, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility means the claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  And even accepting every allegation as true, a court may still find the claim legally deficient if those facts fail to "plausibly allege a legally recognized … claim."  *Guertin v. State*, 912 F.3d 907, 916 (6th Cir. 2019).

### III.  ANALYSIS

Read charitably, the complaint alleges that White and Hart violated the Fourth Amendment and the Equal Protection Clause of the Fourteenth Amendment by authorizing male prison staff to conduct strip searches of Nation.

**A.  Official-capacity claims for money damages**

The complaint asserts these claims against White and Hart in their "official capacities." *See* Complaint at 2.  Because both White and Hart are employees of the Commonwealth of Kentucky, Nation's claims against them in their official capacities are deemed claims against the Commonwealth.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office").  States and state officials sued in their official capacity for damages are absolutely immune from § 1983 liability under state sovereign immunity grounds recognized in the Constitution's Eleventh Amendment.  *See id.* ("[N]either a state nor its officials acting in their official capacities sued for damages are 'persons' under § 1983."); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("This [Eleventh Amendment] bar remains in effect when State officials are sued for damages in their official capacity.").

Nation's official-capacity claims against Defendants White and Hart for monetary damages must therefore be dismissed for failure to state a claim upon which relief may be granted.

**B.  Individual-capacity claims for money damages**

    **1.  Supervisors' failure to address Nation's grievances**

Nation also asserts claims against White and Hart as private citizens—that is, in their individual capacities.  Complaint at 2.  Though the precise basis for these claims is unclear, under

4

§ 1915A the Court construes the complaint to assert that White and Hart erred in denying Nation's grievance related to the alleged constitutional violations. *Id.* at 3–5.

To the extent the complaint alleges that White and Hart wrongfully denied Nation's grievance appeals, the denial of or failure to act upon an inmate's grievance does not, by itself, subject a prison official to liability. As the Sixth Circuit has explained, "'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) ("[Plaintiff] merely alleged that [the defendant] failed to remedy the situation after he had been informed of the problem via [plaintiff's] grievance. [This] allegation does not state a claim[.]").

### 2. Supervisors' approval of strip searches

Also unclear is whether Nation has alleged that White and Hart are liable based on their supervision or implementation of the searches at issue. The KSP policy, as recounted by Nation, states that "a strip search shall be conducted by a staff member of the same gender as the inmate except in exigent circumstances." Complaint at 5. Nation contends that policy, as applied by KSP to transgender inmates, results in searches that violate the Constitution. *Id.*

As a general matter, § 1983 "liability cannot be based on a theory of respondeat superior," also known as the "vicarious liability" of an employer for the acts of an employee. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). Instead, a § 1983 plaintiff must show that a supervisory official "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending [subordinate]." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016); *accord Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff must plead that each Government-official defendant, through the

5

official's own individual actions, has violated the Constitution."). Supervisory liability thus "exists only where some 'execution of the supervisors' job function results in the plaintiff's injury.'" *Winkler v. Madison Cty.*, 893 F.3d 877, 898 (6th Cir. 2018) (alterations adopted) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 752 (6th Cir. 2006)).

In rejecting Nation's grievance appeals, White and Hart appear to have disagreed with the complaint's core contention that the Constitution requires a female security officer to conduct any strip search of Nation. At the § 1915A stage, at least, the complaint's allegations regarding White and Hart's authorization, approval, or knowing acquiescence in unconstitutional conduct appear to rise or fall based on the lawfulness of the policy that Nation asserts is unconstitutional. The Court therefore lacks a basis, for the reasons discussed below, to rule that under no circumstances could Nation establish supervisory liability.

**C.     Claims for injunctive relief**

**1.     Ordering a transfer**

Nation also asks the Court to order White and Hart to transfer Nation "from KSP for good and sen[d] [Nation] to KSR." Complaint at 6. But the Supreme Court has clearly ruled that the Constitution does not provide inmates with a right to choose the institution at which they are incarcerated, *see Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995), at least not unless the state has created a due-process-protected liberty interest in that choice "by placing substantive limitations on official discretion," *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). Kentucky has created no such liberty interest in the location of Nation's incarceration. *See Hanley v. Webb*, 916 F.2d 712 (Table), 1990 WL 159351, at *1 (6th Cir. 1990) (Kentucky law creates no liberty interest regarding "placement in a particular prison."). Instead, the General Assembly has granted corrections officials broad discretion

6

regarding the transfer and housing of prisoners.  Ky. Rev. Stat. § 197.065.  Therefore, Nation's claim for a transfer to another facility must be dismissed for failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915A.

### 2. Regarding the officers conducting strip searches

Nation's complaint, as set forth above, succinctly asserts the factual allegations supporting this claim:

> Everywhere I have been I have been stripped by Female Staff except KSP.  I carry my self as a female.  I have a sports bra on and you would not let a male c/o strip a female would you?  Well I feel the same way as a female inmate would.

Complaint at 4.  As for relief, the pleading continues:

> I am requesting a female staff member to strip search me only.  No male staff at all. That violat[es] my privacy as a transgender.

*Id.*

The Supreme Court has recognized that "convicted prisoners … retain some Fourth Amendment rights upon commitment to a corrections facility."  *Bell v. Wolfish*, 441 U.S. 520, 558–59 (1979).  Strip searches, the Sixth Circuit has held, may under some circumstances violate an inmate's Fourth Amendment right to bodily privacy.  A "prison policy forcing prisoners to be searched by members of the opposite sex," for example, "would provide the basis of a claim on which relief could be granted."  *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004); *accord Cornwell v. Dahlberg*, 963 F.2d 912, 916–17 (6th Cir. 1992) ("[A] convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners.").

But the federal courts have not yet concluded whether those rights encompass Nation's asserted interest in being strip searched by a member of the sex with which Nation identifies.  As

one district court recently recognized, "[a]lthough there is a robust body of case law analyzing the constitutional bounds of strip searches and cross-gender searches in prison, little if any case law addresses the issue of the propriety of cross-gender searches of transgender inmates." *Carter-el v. Boyer*, No. 1:19-cv-243, 2020 WL 939289, at *4 (E.D. Va. Feb. 25, 2020) (addressing plaintiff who "self-identifies as female, [but] is legally male"). Indeed, another district court recently concluded that "[a] nationwide review of caselaw shows that no court … has found that there is a constitutional right for a transgender inmate to have a strip search performed by an officer of the gender with which the inmate identifies." *Naisha v. Metzger*, No. 18-738, 2020 WL 5821751, at *7 (D. Del. Sept. 30, 2020).

Yet these decisions, which arose in the context of qualified immunity rather than prospective relief, leave the Court without an authoritative interpretation of the Fourth Amendment that either affirms or denies the right of a transgender inmate "to have a strip search performed by an officer of the gender with which the inmate identifies." *Id.* Against this legal backdrop, therefore, the Court "cannot determine whether [Nation] has stated a claim upon which relief may be granted, as required by § 1915A, without the benefit of a response from the [government]." *Adams v. Hogsten*, No. 13-cv-26, 2013 WL 4521095, at *5 (E.D. Ky. Aug. 23, 2013). Although a more definitive statement of Nation's allegations could conceivably aid the Court's consideration of these claims, the Court cannot conclude that Nation's allegations are "frivolous, malicious, or [do not] state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

As to the Equal Protection Clause, the complaint and the law render the Court's obligation to "review" the complaint, § 1915A(a), and "identify cognizable claims," § 1915A(b), harder still. The *pro se* civil-rights complaint form Nation completed asks plaintiffs to "identify the constitutional right(s) you allege was/were violated." Complaint at 4. Nation's pleadings do not

identify the Fourteenth Amendment's Equal Protection Clause (or for that matter the Fourth Amendment) as having been violated by White and Hart. And the caselaw connecting equal-protection jurisprudence to strip searches is more attenuated than the Fourth Amendment bodily-privacy decisions discussed above. *Compare, e.g.*, *Guy v. Espinoza*, No. 1:19-cv-498, 2020 WL 309525, at *11–12 (E.D. Cal. Jan. 21, 2020), *adopted by* 2020 WL 949556 (E.D. Cal. Feb. 27, 2020) (concluding that a transgender inmate was not similarly situated to cisgender inmates under the Equal Protection Clause), *with Hampton v. Baldwin*, No. 3:18-cv-550, 2018 WL 5830730 at *11 (S.D. Ill. Nov. 7, 2018) (concluding that a transgender inmate was similarly situated to cisgender inmates under the Equal Protection Clause).

Construing the *pro se* pleading liberally, as the Court must at the § 1915A screening stage, the complaint's assertions that Nation "feel[s] the same way as a female inmate would," yet is searched differently, Complaint at 4, could be read to allege that Nation "was treated differently than similarly situated individuals" under the Equal Protection Clause. *See Bell v. Lewis*, No. 4:20-cv-P34, 2020 WL 4227394, at *3 (W.D. Ky. June 23, 2020) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Although again the complaint is not entirely clear, and does not specify who allegedly should be deemed similarly situated, the Court cannot at this stage conclude that such an equal-protection allegation would fail to state a claim. 28 U.S.C. § 1915A(b)(1).

## ORDER

The Court **DISMISSES** the official-capacity claims for monetary damages, the injunctive-relief claims for a transfer, and the individual-capacity claims for failing to grant Nation's grievance. These allegations fail to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1), (2).

Because the remaining claims survive the § 1915A screening, the Court will enter a Service and Scheduling Order.

Date: February 26, 2021

Benjamin Beaton, District Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants
General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
B213.010